NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| GLENN L., | ) |
| | ) Supreme Court No. S-17585 |
| Appellant, | ) |
| | ) Superior Court No. 3PA-16-00014/ |
| v. | ) 00015/00016/00017/00018 CN |
| | ) |
| STATE OF ALASKA, DEPARTMENT | ) MEMORANDUM OPINION |
| OF HEALTH & SOCIAL SERVICES, | ) AND JUDGMENT* |
| OFFICE OF CHILDREN'S SERVICES, | ) |
| | ) No. 1767 – May 20, 2020 |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Gregory Heath, Judge.

Appearances: Kelly R. Taylor, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for Appellant. Katherine Demarest, Assistant Attorney General, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices. [Stowers, Justice, not participating.]

I.  **INTRODUCTION**

A father challenges the trial court's decision to terminate his parental rights to four children. Because the evidence supports the court's findings and the court correctly applied relevant law, we affirm the parental rights termination.

---

*   Entered under Alaska Appellate Rule 214.

## II.    BACKGROUND

Glenn L. has four children who were minors during the relevant proceedings.[1]  The Office of Children's Services (OCS) became actively involved with the family in 2016.  Given the nature of this appeal we do not need to detail the history of OCS's involvement with the family, but in January 2016 OCS took emergency custody of the children and in May 2018 petitioned for termination of Glenn's parental rights.  After a termination trial in June 2019, the trial court concluded that OCS had met its burden of persuasion for the parental rights termination.[2]  Glenn appeals three of the

---

[1]    A pseudonym is used for privacy protection.

[2]    Under relevant Alaska Child in Need of Aid (CINA) statutes and rules, parental rights may be terminated at trial only if OCS shows, under Rule 18(c):

> (1) by clear and convincing evidence that
>
>> (A) the child has been subjected to conduct or conditions described in AS 47.10.011 and
>>
>>> (i) the parent has not remedied the conduct or conditions in the home that place the child at substantial risk of harm; or
>>>
>>> (ii) the parent has failed, within a reasonable time, to remedy the conduct or conditions in the home that place the child in substantial risk so that returning the child to the parent would place the child at substantial risk of physical or mental injury; or
>>
>> . . . .
>
> (2) by clear and convincing evidence that
>
>> (A) the Department has complied with the provisions of AS 47.10.086 concerning reasonable efforts [and]
>>
>> . . . .

(continued...)

findings underlying the termination of his parental rights: (1) the children were at substantial risk of harm because of his substance use; (2) the children were exposed to domestic violence; and (3) he failed to remedy the danger of physical abuse to the children. The resolution of Glenn's appeal turns only on the first challenged finding.

## III. STANDARD OF REVIEW

In a case involving the termination of parental rights we review a trial court's findings of fact for clear error.[3] Findings are clearly erroneous only if, after reviewing the record in the light most favorable to the prevailing party, we are left with a "definite and firm conviction that a mistake has been made."[4] When reviewing factual findings "we ordinarily will not overturn a trial court's finding based on conflicting evidence,"[5] and we will not reweigh evidence "when the record provides clear support

---

[2]     (...continued)
(3) by a preponderance of the evidence that termination of parental rights is in the best interests of the child.

*Accord* AS 47.10.088.

[3]     *Martin N. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 79 P.3d 50, 53 (Alaska 2003) (citing *V.S.B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 45 P.3d 1198, 1203 (Alaska 2002)).

[4]     *Brynna B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 88 P.3d 527, 529 (Alaska 2004) (quoting *A.B. v. State, Dep't of Health & Soc. Servs.*, 7 P.3d 946, 950 (Alaska 2000)).

[5]     *Martin N.*, 79 P.3d at 53.

for the trial court's ruling."[6]  Whether the trial court's factual findings satisfy the CINA statutes' requirements is a question of law that we review de novo.[7]

## IV.    DISCUSSION

The trial court determined that Glenn's children were in need of aid under AS 47.10.011(10), providing for a child in need of aid finding if the parent's "ability to parent has been substantially impaired by the addictive or habitual use of an intoxicant, and the addictive or habitual use of the intoxicant has resulted in a substantial risk of harm to the child[ren]."  In Glenn's appeal brief he does not dispute the finding that he addictively or habitually used substances, including alcohol, marijuana, and methamphetamine.  He instead argues that OCS presented insufficient evidence of a "nexus" between his substance use and substantial risk of harm to the children, and he contends that OCS's evidence did not show he ever was impaired by methamphetamine *while* caring for his children.

But, as OCS points out, Glenn misconstrues the CINA statute; AS 47.10.011(10) "does not require that a child be present when the drug use occurred."[8] In *Barbara P. v. State, Department of Health & Social Services, Office of Children's Services* we considered whether a mother's "drug use impaired her ability to parent or

---

[6]        *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 214 (Alaska 2000).

[7]        *Carl N. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 102 P.3d 932, 935 (Alaska 2004); *see also D.H. v. State, Dep't of Health & Soc. Servs.*, 929 P.2d 650, 654 n.11 (Alaska 1996).

[8]        *Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1259 (Alaska 2010).

. . . posed a substantial risk of harm to her children."[9]  We explained that OCS did not need to present evidence that the mother had used drugs in the child's presence and "was not obligated to . . . wait to accumulate evidence of parenting problems based on her admitted drug use, thereby risking actual harm to the child"[10]  And in *Lucy J. v. State, Department of Health & Social Services, Office of Children's Services* we rejected a mother's similar argument that OCS had failed to show that her substance use impaired her parenting.[11]  We noted the record showing that the mother "struggled for years with alcohol abuse and dependency and . . . failed to undergo recommended assessments and fully engage in treatment programs," and we determined that her "behavior clearly had a negative impact on the children," citing an example of her missing an appointment while intoxicated.[12]  And in an unreported decision, *Daphne W. v. State, Department of Health & Social Services, Office of Children's Services*, we considered a mother's argument that there was "insufficient evidence of any 'nexus' " between her substance use and her ability to care for her children.[13]  We disagreed, noting that her "ongoing substance abuse, multiple probation violations, and willingness to leave her children with questionable caregivers . . . support the conclusion that [her] drug use substantially impaired her ability to parent and resulted in a substantial risk of harm to her children."[14]

---

[9]     *Id.* at 1258.

[10]     *Id.* at 1259.

[11]     244 P.3d 1099, 1112-13 (Alaska 2010).

[12]     *Id.* at 1113.

[13]     No. S-13137, 2009 WL 1636261, at *3 (Alaska June 10, 2009).

[14]     *Id.* at *4.

Similar to *Barbara P.*, Glenn was "in and out of substance abuse programs" and tested positive for a controlled substance.[15] And despite Glenn's argument that OCS did not show he was impaired by methamphetamine *while* caring for his children, OCS "was not obligated to leave" or return the children to him "and wait to accumulate evidence of parenting problems based on [his] admitted drug use, thereby risking actual harm to the child[ren]."[16] Similar to *Lucy J.*, the record shows that Glenn has a long history of substance use issues, has failed to fully engage in treatment programs, and his substance use had a negative impact on the children because he has a history of neglecting them.[17] And similar to *Daphne W.*, there is substantial support in the record reflecting Glenn's ongoing substance use and failed treatment programs, which the court reasoned "indicates a habitual or addictive use of intoxicants, placing [Glenn's] children at a substantial risk of harm."[18]

Glenn argues that his substance use did not factor into his failure to safely parent his children, but evidence supports the trial court's finding that it did. Two OCS caseworkers testified to the importance of Glenn remedying his substance abuse to increase visitation and to meaningfully engage in his case plans because he had a history of failing to protect the children when he used alcohol heavily. The court specifically noted Glenn's admission that "his substance use is one of the primary concerns associated with his safety as a parent"; the court also noted that he needed to demonstrate sobriety to comply with his multiple OCS case plans and to participate in the children's therapy but that he failed to do so.

---

[15] *See* 234 P.3d at 1259.

[16] *Id.*

[17] *See* 244 P.3d at 1112-13.

[18] *See* No. S-13137, 2009 WL 1636261, at *3-4.

Based on the foregoing we affirm the trial court's child in need of aid finding, and thus the termination of Glenn's parental rights.[19]

## V.      CONCLUSION

We AFFIRM the trial court's decision terminating Glenn's parental rights.

---

[19]      Only one child in need of aid finding is necessary; we thus do not need to consider Glenn's challenges to the court's separate child in need of aid and failure to remedy findings. *See Rick P. v. State, OCS*, 109 P.3d 950, 956 (Alaska 2005) (noting it is unnecessary to consider other findings if record supports one ground for finding child to be in need of aid).